**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

JOSHUA ISAIAH MONEY,     :
                                 :
           Plaintiff        :
                                 :
         VS.           :       CIVIL No: 4:22-CV-168-CDL-MSH
                                 :
GEORGIA DEPARTMENT OF    :
CORRECTIONS, *et al.*,         :
                                 :
         Defendants   :
_____

## ORDER AND RECOMMENDATION

Presently pending before the Court is a Complaint filed by *pro se* Plaintiff Joshua Isaiah Money, an inmate currently incarcerated at the Rutledge State Prison in Columbus, Georgia, seeking relief under 42 U.S.C. § 1983 (ECF No. 1).   Plaintiff also seeks leave to proceed *in forma pauperis* in this action and has filed two motions for appointed counsel. For the following reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED,** but his motions for appointed counsel (ECF Nos. 3, 6) are **DENIED.**   In addition, it is **RECOMMENDED** that Plaintiff's claims against the Georgia Department of Corrections itself and Commissioner Ward and his claims that all Defendants have poisoned him or read his mind are **DISMISSED without prejudice.**   Because Plaintiff's remaining claims arise from events occurring at the Johnson State Prison and all remaining Defendants appear to be located there, it is also **RECOMMENDED** that Plaintiff's remaining claims are **TRANSFERRED** to the Southern District of Georgia.

## MOTION TO PROCEED IN FORMA PAUPERIS

28 U.S.C. § 1915 allows the district courts to authorize the commencement of a civil action without prepayment of the normally-required fees upon a showing that the plaintiff is indigent and financially unable to pay the filing fee.   A prisoner seeking to proceed *in forma pauperis* ("IFP") under this section must provide the district court with both (1) an affidavit in support of his claim of indigence and (2) a certified copy of his prison "trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint." § 1915(a)(1)-(2).

In this case, Plaintiff's pauper's affidavit and trust account statement show that he is currently unable to prepay the Court's filing fee.   Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is thus **GRANTED** and Plaintiff will be assessed an initial partial filing fee of $0.00.   Plaintiff, however, is still obligated to pay the full balance of the filing fee, in installments, as set forth in § 1915(b) and explained below.   It is accordingly requested that the **CLERK** forward a copy of this **ORDER** to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee.   The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if the Plaintiff's Complaint (or any part thereof) is dismissed prior to service.

### I.   Directions to Plaintiff's Custodian

It is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the Clerk of this Court twenty percent (20%)

of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.   It is further **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.    Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.   In the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.   Collection from Plaintiff of any balance due on these payments by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit such payments.   Plaintiff's Complaint is subject to dismissal if he has the ability to make such payments and fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## MOTIONS FOR APPOINTED COUNSEL

Plaintiff has also filed two motions seeking appointed counsel (ECF Nos. 3, 6).   As these are Plaintiff's first requests for counsel, the Court advises Plaintiff that

"[a]ppointment of counsel in a civil case is not a constitutional right."  *Wahl v McIver*, 773 F.2d 1169, 1174 (11th Cir. 1986).   Appointment of counsel is a privilege that is justified only by exceptional circumstances.  *Id*.  In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented.  *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989). [1]  But "[t]he key" in determining whether appointed counsel is warranted "is whether the *pro se* litigant needs help in presenting the essential merits of his position to the court."  *Nelson v. McLaughlin*, 608 F. App'x 904, 905 (11th Cir. 2015) (per curiam)

In accordance with *Holt*, and upon a review of the record in this case, the Court notes that Plaintiff has been able to set forth the essential merits of his claims, and the applicable legal doctrines are readily apparent.   As such, Plaintiff's pending motions for appointed counsel are **DENIED** at this time.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.    Standard of Review

In accordance with the Prison Litigation Reform Act ("PLRA"), the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.   *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.

---

[1] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case.  *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989).

Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).   *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).   The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'"   *Id.* (citation omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'"   *Twombly*, 550 U.S. at 555 (citation omitted).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere

5

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

Plaintiff's claims arise from his previous incarceration at the Johnson State Prison ("JSP") between 2019 and 2022.   Compl. 5, ECF No. 1.   According to the Complaint, the staff at JSP poisoned Plaintiff's food and sprayed poison into Plaintiff's cell and on his clothing, and Plaintiff "almost died multiple times from severe poisoning." *Id.*   Plaintiff further contends that "the staff were using advanced psychotechnology to read [his] mind and gain access to [his] exact thoughts, then they would play exactly what [he] was thinking back through audio devices w[h]ich myself and other people could hear." *Id.*   In addition, Plaintiff alleges that unspecified individuals gave inmates and staff members access to his medical and mental health records. *Id.*   Plaintiff also states that he "was assaulted multiple times by staff members," was "denied medical help for months at a time," and that "chemical agents were used against [him] for no reason at all." *Id.*   Plaintiff thus contends that Defendants' actions and inaction violated his constitutional rights, and as a result he seeks compensatory and punitive damages. *Id.* at 6.

### III.    Plaintiff's Claims

Plaintiff has named as Defendants in this action the Georgia Department of Corrections ("GDC"); GDC Commissioner Timothy Ward; Special Agent Villegas, a GDC "criminal investigator"; Dr. Sommerhauser, a psychologist at JSP; and Wardens Gibbons and Watson, both of whom are employed at JSP.   Compl. 4, ECF No. 1.   In addition, Plaintiff sues Warden Caldwell, who is employed at the Georgia Diagnostic and Classification Prison in Jackson, Georgia but may have been previously employed at JSP. *Id.*   For the following reasons, Plaintiff's claims against the GDC and his claims that Defendants "tortured" him by poisoning him and reading his mind should be dismissed. Because venue is not appropriate as to Plaintiff's remaining claims, however, they should be transferred to the Southern District of Georgia for further proceedings.

#### A.  Claims against the GDC

As an initial matter, the claims against the GDC itself must be dismissed.   The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   Thus, "[t]he Eleventh Amendment bars suits against a state for alleged deprivations of civil liberties unless the state has waived its immunity or 'unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.'"   *Robinson v. Ga. Dep't of Transp.,* 966 F.2d 637, 640 (11th Cir.1992) (quoting *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989)).   The United States Supreme Court has "concluded that Congress, in

7

passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment." *Id.* (citing *Quern v. Jordan,* 440 U.S. 332, 341 (1979)). Moreover, the State of Georgia has not waived its sovereign immunity with respect to cases brought in federal court. *See* Ga. Const. art. I, § II, para. IX(f) ("No waiver of sovereign immunity shall be construed as a waiver of any immunity provided to the state . . . by the United States Constitution."); *see also Robinson*, 966 F.2d at 640. As a state entity, the GDC is also entitled to Eleventh Amendment immunity. *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections . . . . This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief."); *see also Will*, 491 U.S. at 70 (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983). Plaintiff's claims against the GDC should therefore be dismissed.

### B. Claims against Defendant Ward

Plaintiff's claims against Defendant Ward should also be dismissed. Plaintiff has not alleged that Defendant Ward personally participated in any of the alleged constitutional violations in this case. Plaintiff instead appears to be attempting to hold Defendant Ward liable in his supervisory capacity as the commissioner of the GDC. It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, supervisors can only be held liable under § 1983 if they personally participated in

unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation.  *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam).   A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.*   "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."   *Id.* (internal quotation marks omitted).

Plaintiff has not alleged any facts suggesting that a history of widespread abuse would have put Defendant Ward on notice of a need to correct the alleged constitutional deprivation in this case; nor has Plaintiff alleged that Defendant Ward had an improper custom or policy concerning inmates' care or that he directed his subordinates to act unlawfully (or knew they would do so and failed to stop them).   Plaintiff has therefore failed to plead an adequate basis for holding Defendant Ward responsible for any alleged constitutional violation in this case, and he should be dismissed from this action.

## C.   Poisoning and Mind Reading Claims

Plaintiff's Complaint centers on his allegations that Defendants at JSP poisoned his food and sprayed poison in his cell for months, causing his skin to "turn[] dark black and shriv[el] up" and scabs to form on his body.   Attach. 1 to Compl. 1, ECF No. 1-1. Plaintiff further alleges that Defendants confessed to putting poison in his food and avers that he "almost died on several occasions" due to the poisoning.   *Id.*   In addition, Plaintiff

contends that Defendants at JSP placed "hidden cameras and audio equipment" in his cells and broadcast "nude videos" of him "to the inmates and staff at the prison." *Id.* at 3. Plaintiff also alleges that "these people also had very advanced technology that allowed them to access exactly what [he] was thinking and actually read [his] mind." *Id.* Plaintiff states that Defendants used this "mind reading electronic technology" to torture him "by playing [his] exact thoughts over audio devices hidden in various cells and around the dorm." *Id.* at 3-4.

As noted above, federal law requires the Court to dismiss a claim filed by a prisoner proceeding *in forma pauperis* if the claim is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i); 28 U.S.C. § 1915A(b)(1). A claim is considered "frivolous" if it "involve[s] factual contentions that are fanciful, fantastic, irrational, and/or delusional." *Porter v. Governor*, 667 F. App'x 766, 767 (11th Cir. 2016) (per curiam) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)). Plaintiff's claims that Defendants are intentionally poisoning him and using advanced technology to read his mind are plainly "irrational and wholly incredible." *Gary v. U.S. Gov't*, 540 F. App'x 916, 917-18 (11th Cir. 2013) (per curiam) (affirming dismissal as frivolous claims that high-ranking government officials implanted microchips into plaintiff's body); *Hines v. United States*, 166 F. App'x 610, 611 (3d Cir. 2006) (per curiam) (dismissing appeal as frivolous where plaintiff alleged that the government and others "tortured him with poisonous gas for the last 12 years whenever he tried to study toward his career goals"); *LaVeau v. Snyder*, 84 F. App'x 654, 656 (7th Cir. 2003) (holding that prisoner's "allegations of a surveillance device that can read minds and manipulate thoughts are fantastic and delusional, and

accordingly [the prisoner's] complaint was properly dismissed without an evidentiary hearing"); *Huey v. Raymond*, 53 F. App'x 329, 330 (6th Cir. 2002) (affirming dismissal as frivolous plaintiff's claims that "231 prison employees . . . were conspiring to make [his] life miserable by poisoning virtually every item of food served to [the plaintiff] in the prison cafeteria, in his cell, and purchased at the canteen"); *Brock v. Angelone*, 105 F.3d 952, 953-54 (4th Cir. 1997) (finding prisoner's claim that he was being poisoned via an ingredient in the prison's pancake syrup was fanciful or delusional, dismissing appeal as frivolous, and imposing sanctions).

    D. <u>Remaining Claims</u>

Plaintiff also raises several claims in his Complaint that are at least plausible.   For example, Plaintiff states he "was assaulted multiple times by staff members and denied medical help for months at a time."   Compl. 5, ECF No. 1.   In addition, Plaintiff states that "chemical agents were used against [him] for no reason at all."   *Id.*   As noted above, Plaintiff's claims arise from his treatment at JSP, which is located in the Southern District of Georgia.   And although it is not entirely clear which Defendants Plaintiff believes are responsible for any claims concerning the alleged assaults and lack of medical treatment, it appears those individuals would likely be located in the Southern District.   The Court can therefore no longer discern a basis for venue in this Court, and a proper venue for this case would be in the Southern District.   *See* 28 U.S.C. § 1391(b).   This case should thus be transferred to the Dublin Division of the United States District Court for the Southern District of Georgia.   *See* 28 U.S.C. § 1406(a) (authorizing district court to "dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have

been brought"); 28 U.S.C. § 90(c)(2).[2]

## CONCLUSION

Based on the foregoing, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED,** but his motions for appointed counsel (ECF Nos. 3, 6) are **DENIED.** In addition, it is **RECOMMENDED** that Plaintiff's claims against the Georgia Department of Corrections itself and Commissioner Ward and his claims that all Defendants have poisoned him or read his mind are **DISMISSED without prejudice.** Because Plaintiff's remaining claims arise from events occurring at the Johnson State Prison and all remaining Defendants appear to be located there, it is **RECOMMENDED** that Plaintiff's remaining claims are **TRANSFERRED** to the Southern District of Georgia. *See Brownsberger v. Nextera Energy, Inc.*, 436 F. App'x 953, 953 (11th Cir. 2011) (per curiam) (affirming district court's dismissal of claims against remaining defendants under § 1406(a) after dismissing one defendant for lack of personal jurisdiction).

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Clay D. Land, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this

---

[2] Plaintiff's claims, as pleaded, are likely subject to dismissal because Plaintiff has failed to clearly associate each named Defendant with a violation of his constitutional rights. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). But because it is also unclear whether the statute of limitations would bar the refiling of Plaintiff's remaining claims if they are dismissed, the Court should exercise its discretion to transfer this case rather than dismiss it altogether. *See, e.g., Margulis v. Stryker Corp.*, 377 F. Supp. 3d 1367, 1369 (S.D. Fla. 2019) (noting that the "interest of justice" may require that a complaint be transferred pursuant to § 1406(a) rather than dismissed "where a statute of limitations defense may arise").

Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See*

M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written

objections, provided a request for an extension is filed prior to the deadline for filing written

objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the

right to challenge on appeal the district judge's order based on factual and legal conclusions

to which no objection was timely made.  *See* 11th Cir. R. 3-1.

      **SO ORDERED AND RECOMMENDED** this 30th day of January, 2023.

              /s/ Stephen Hyles
              UNITED STATES MAGISTRATE JUDGE