IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| JOSHUA ISAIAH MONEY, | : | |
| | : | |
| Plaintiff, | : | |
| VS. | : | NO. 4:22-CV-00168-CDL-MSH |
| | : | |
| GEORGIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court are Plaintiff's Objections (ECF No. 10) to the Recommendation to dismiss Plaintiff's claims without prejudice (ECF No. 9). Plaintiff has also filed a motion for leave to file an amended complaint in this case (ECF No. 11). For the reasons discussed below, Plaintiff's motion for leave to amend is **GRANTED**. The undersigned also **VACATES** the January 30, 2023, Recommendation to dismiss Plaintiff's claims (ECF No. 9) and has conducted a preliminary screening of Plaintiff's Amended Complaint. Based on this review, it is now **RECOMMENDED** that Plaintiff's claims against Defendant Villegas and his claims that Defendants were poisoning him and reading his mind should be dismissed. Because Plaintiff is located in the Southern District of Georgia, and because his remaining claims concern conduct that occurred in that district and are proceeding almost exclusively against Defendants located in that district, it is also **RECOMMENDED** that the Court transfer those claims to the Southern District of Georgia for further proceedings.

## DISCUSSION

### I. Procedural History

Plaintiff's claims arise from his previous detention at the Johnson State Prison ("JSP") wherein he alleges various jail officers poisoned him, used advanced technology to read his mind, gave inmates and staff unauthorized access to his medical and mental health records, assaulted him, and failed to provide him with adequate medical treatment. Order & Recommendation 6, ECF No. 9. The undersigned concluded that Plaintiff's claims against the Georgia Department of Corrections (the "GDC") itself were barred by Eleventh Amendment immunity; that his claims against GDC Commissioner Ward failed to state a claim upon which relief may be granted; that Plaintiff's allegations that Defendants poisoned him and read his mind were frivolous; and that Plaintiff's remaining claims should be transferred to the Southern District of Georgia because venue was not proper in this District. Order & Recommendation 12, Jan. 30, 2023, ECF No. 9.

Plaintiff has objected to the dismissal of his claims that he has been poisoned and subjected to mind-reading technology. Objs. 1, Mar. 1, 2023, ECF No. 10. In doing so, Plaintiff states he believes that the undersigned recommended dismissal of Plaintiff's original Complaint because Plaintiff named Commissioner Ward and the GDC as Defendants therein. *Id.* Plaintiff thus filed a motion to amend his Complaint to dismiss Defendant Ward and the GDC and to further explain his claims against other individuals alleged to have violated his constitutional rights. Mot. Am. 1, ECF No. 1; Am. Compl. 1, Attach. 1 to Mot. Am., ECF No. 11-1.

Plaintiff has the right to amend his Complaint once at this stage of the litigation. Fed. R. Civ. P. 15(a). Plaintiff's motion to amend (ECF No. 11) is granted, and the January 30, 2023, Recommendation to dismiss the original Complaint and Plaintiff's Objections to that Recommendation are now moot. The undersigned therefore vacates the Recommendation of dismissal so that the Court can conduct a preliminary screening of Plaintiff's claims, as supplemented by the allegations made in his Amended Complaint.[1]

## II.    Preliminary Screening of Plaintiff's Claims

### A. Standard of Review

In accordance with the Prison Litigation Reform Act ("PLRA"), the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"

---

[1] An amended complaint generally supersedes the original complaint unless the amended complaint specifically refers to or adopts the original complaint. *See Schreane v. Middlebrooks*, 522 F. App'x 845, 847 (11th Cir. 2013) (per curiam). In this case, Plaintiff states, "I want amended claims added to my original petition." Attach. 1 to Mot. Am. 3, ECF No. 11-1. The Court will therefore consider the factual allegations made in the original Complaint in conjunction with those made in the Amended Complaint.

3

*Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in

4

support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

### B. Factual Allegations

Plaintiff's claims arise from his previous incarceration at the JSP between 2019 and 2022. Compl. 5, ECF No. 1. As will be discussed in more detail below, Plaintiff contends the staff at JSP poisoned Plaintiff's food and sprayed poison into Plaintiff's cell and on his clothing, and Plaintiff "almost died multiple times from severe poisoning." *Id.* Plaintiff further contends that "the staff were using advanced psychotechnology to read [his] mind and gain access to [his] exact thoughts, then they would play exactly what [he] was thinking back through audio devices w[h]ich myself and other people could hear." Compl. 5, ECF No. 1. In addition, Plaintiff alleges that unspecified individuals gave inmates and staff members access to his medical and mental health records. *Id.* Plaintiff also states that he "was assaulted multiple times by staff members," was "denied medical help for months at a time," and that "chemical agents were used against [him] for no reason at all." *Id.* Plaintiff has named as Defendants in this action Special Agent Villegas, a GDC "criminal investigator"; Dr. Sommerhauser, a psychologist at JSP; and Wardens Gibbons and Watson, both of whom are employed at JSP. Compl. 4, ECF No. 1. In addition, Plaintiff sues Warden Caldwell, who is employed at the Georgia Diagnostic and Classification Prison in Jackson, Georgia but may have been previously employed at JSP. *Id.* Finally, Plaintiff sues Steffan Gibbs, a CERT sergeant at Coastal State Prison in Savannah, Georgia. Mot. Am. Compl. 1, ECF No. 11. Plaintiff contends that these Defendants' actions and

inaction violated his constitutional rights, and as a result he seeks compensatory and punitive damages.  Compl. 6, ECF No. 1.

    III.    <u>Plaintiff's Claims</u>

        *A. Claims against Defendant Villegas*

As an initial matter, Plaintiff has failed to allege any facts associating GDC investigator Defendant Villegas with any alleged constitutional violation in this case. Plaintiff's claims against this Defendant should therefore be dismissed without prejudice. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

        *B. Poisoning and Mind Reading Claims*

Plaintiff's Complaint focuses primarily on his allegations that Defendants at JSP poisoned his food and sprayed poison in his cell for months, causing his skin to "turn[] dark black and shriv[el] up" and scabs to form on his body.  Attach. 1 to Compl. 1, ECF No. 1-1.  Plaintiff further alleges that Defendants confessed to putting poison in his food and avers that he "almost died on several occasions" due to the poisoning.  *Id.*  Plaintiff primarily alleges that Defendants Watson, Caldwell, and Gibbons were responsible for poisoning Plaintiff.  Attach. 1 to Mot. Am. 1, ECF No. 11-1.  But Plaintiff also contends that Defendant Sommerhauser "put medications and chemicals in [Plaintiff's] food that made [him] sick."  Attach. 1 to Mot. Am. 2, ECF No. 11-1.

In addition, Plaintiff contends that Defendants at JSP placed "hidden cameras and audio equipment" in his cells and broadcast "nude videos" of him "to the inmates and staff

at the prison." Compl. 3, ECF No. 1. Plaintiff further alleges that "these people also had very advanced technology that allowed them to access exactly what [he] was thinking and actually read [his] mind." *Id.* Plaintiff states that Defendants used this "mind reading electronic technology" to torture him "by playing [his] exact thoughts over audio devices hidden in various cells and around the dorm." *Id.* at 3-4; *see also* Attach. 1 to Mot. Am. 3, ECF No. 11-1 (alleging that Defendants Sommerhauser and Watson "harass[ed]" him "through hidden audio devices" in his cell in segregation at JSP).

As noted above, federal law requires the Court to dismiss a claim filed by a prisoner proceeding *in forma pauperis* if the claim is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i); 28 U.S.C. § 1915A(b)(1). A claim is considered "frivolous" if it "involve[s] factual contentions that are fanciful, fantastic, irrational, and/or delusional." *Porter v. Governor*, 667 F. App'x 766, 767 (11th Cir. 2016) (per curiam) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)). Plaintiff's claims that Defendants are intentionally poisoning him and using advanced technology to read his mind are plainly "irrational and wholly incredible." *Gary v. U.S. Gov't*, 540 F. App'x 916, 917-18 (11th Cir. 2013) (per curiam) (affirming dismissal as frivolous claims that high-ranking government officials implanted microchips into plaintiff's body); *Hines v. United States*, 166 F. App'x 610, 611 (3d Cir. 2006) (per curiam) (dismissing appeal as frivolous where plaintiff alleged that the government and others "tortured him with poisonous gas for the last 12 years whenever he tried to study toward his career goals"); *LaVeau v. Snyder*, 84 F. App'x 654, 656 (7th Cir. 2003) (holding that prisoner's "allegations of a surveillance device that can read minds and manipulate thoughts are fantastic and delusional, and accordingly [the prisoner's]

7

complaint was properly dismissed without an evidentiary hearing"); *Huey v. Raymond*, 53 F. App'x 329, 330 (6th Cir. 2002) (affirming dismissal as frivolous plaintiff's claims that "231 prison employees . . . were conspiring to make [his] life miserable by poisoning virtually every item of food served to [the plaintiff] in the prison cafeteria, in his cell, and purchased at the canteen"); *Brock v. Angelone*, 105 F.3d 952, 953-54 (4th Cir. 1997) (finding prisoner's claim that he was being poisoned via an ingredient in the prison's pancake syrup was fanciful or delusional, dismissing appeal as frivolous, and imposing sanctions).  These claims should therefore be dismissed.

### C.  Remaining Claims

Plaintiff's remaining claims are based on facts which are at least plausible.  For example, Plaintiff alleges that Defendant Sommerhauser failed to provide him adequate mental health treatment for "multiple mental illnesses."  Attach. 1 to Mot. Am. 1, ECF No. 11-1 (asserting that Defendant Sommerhauser kept Plaintiff "in observation cells for months and completely deni[ed him] mental health treatment").  Plaintiff further alleges that Defendant Gibbs used excessive force and chemical agents against him "for no reason" and "had [Plaintiff] assaulted" by other inmates.  *Id.* at 2.  In addition, Plaintiff contends Defendants Watson, Gibbons, Caldwell, and Sommerhauser denied Plaintiff medical care despite knowing Plaintiff "was seriously ill from food poisoning and the misuse of chemical agents against [him]."  *Id.*[2]  He also alleges that unspecified individuals gave

---

[2] Plaintiff also says that he notified two nurses, Wray and Oliver, that he was "seriously ill."  Attach. 1 to Mot. Am. 2, ECF No. 11-1.  Plaintiff has not named those individuals as Defendants in this action.

inmates and staff members unauthorized access to his medical and mental health records. Compl. 5, ECF No. 1.

Plaintiff also alleges that the conditions of his confinement at JSP were constitutionally inadequate. For example, he asserts that Defendant Sommerhauser housed him in a cell where he was "exposed to extremely cold tempatures [sic] and wind chill that were unbareable [sic]," failed to provide him adequate clothing, refused to allow him to take a shower "for weeks at a time," denied him personal hygiene supplies, and denied him "the materials [he] needed to keep [his] living quarters sanitary for months during 2020." *Id.* at 3. And Plaintiff finally states that Defendant Chambers retaliated against Plaintiff for complaining about "the torture and abuse [Plaintiff] faced at the hands of the other wardens and Dr. Sommerhauser." *Id.*

As noted above, all Plaintiff's claims arise from his treatment at JSP, which is located in the Southern District of Georgia, and with the possible exception of Defendant Caldwell, it appears the remaining named Defendants would likely be located in the Southern District. Plaintiff is also currently housed in the Augusta State Medical Prison, which is located in the Southern District of Georgia. It therefore appears that a more appropriate venue for any potential claims remaining in this action would be in the Southern District. *See* 28 U.S.C. § 1391(b).

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The undersigned finds that a transfer of this action to Dublin Division of the United States District Court for the Southern District

9

of Georgia would be more convenient for the parties and witnesses. Furthermore, even if Plaintiff's claims are subject to dismissal as pleaded, it is also unclear whether the statute of limitations would bar the refiling of Plaintiff's remaining claims if they are dismissed. The interests of justice would therefore also be served by a transfer of this action. *See, e.g., Aguacate Consol. Mines Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978) (holding that transfer of case was in the interest of justice where part of plaintiff's case could be barred by statute of limitations if plaintiff were required to refile).[3]

For these reasons, and in accordance with the "long-approved practice of permitting a court to transfer a case *sua sponte* under the doctrine of *forum non conveniens*, as codified at 28 U.S.C. § 1404(a)," it is recommended that this case be transferred to the Dublin Division of the Southern District of Georgia. *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (internal quotation marks omitted); *see also* 28 U.S.C. § 90(c)(2). If Plaintiff objects to the transfer of these claims, he should file objections in accordance with the instructions below and show cause why these claims should not be transferred to the Southern District. *See Tazoe*, 631 F.3d at 1336 (holding that before sua sponte transferring a case pursuant to § 1404(a), the court should at a minimum issue a show cause order to afford the parties an opportunity to state their reasons why the case should not be transferred).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for leave to amend (ECF No. 11) is **GRANTED**, and because the January 30, 2023, Recommendation to dismiss Plaintiff's claims (ECF No. 9) is now moot, it is **VACATED.** It is also **RECOMMENDED** that Plaintiff's claims against Defendant Villegas and his claims that Defendants were poisoning him and reading his mind be dismissed without prejudice and that Plaintiff's remaining claims be transferred to the Dublin Division of the Southern District of Georgia for further proceedings.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Clay D. Land, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED** this 16th day of March, 2023.

/s/ Stephen Hyles  
UNITED STATES MAGISTRATE JUDGE